IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN M.,

        **Plaintiff,**

  v.

                              Civil Action 2:24-cv-04310
                              Judge Algenon L. Marbley
                              Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, John M., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 10), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff applied for DIB and SSI on August 28, 2021[1], alleging that he has been disabled since March 1, 2020, due to "worsening chronic joint pain due to fibromyalgia, bone spur in left

---

[1] Plaintiff previously applied for benefits on May 30, 2018. Based on those applications, Plaintiff was found to not be disabled within the meaning of the Social Security Act by ALJ Heidi Southern on February

ankle, sciatica with left leg involvement, chronic back pain, chronic diarrhea, and mental health issues." (R. at 118, 282-307, 331.) Plaintiff's application was denied initially in May 2022 and upon reconsideration in July 2022. (R. at 118-125, 138-145.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 197-198.) On October 6, 2020, Plaintiff, who was represented by counsel, appeared and testified at a hearing held by an administrative law judge. (R. at 65-92.) On October 2, 2023, Jeannine Lesperance (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 47-64.) The Appeals Council denied Plaintiff's request for review. (R. at 1-6.) This matter is properly before this Court for review.

## II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports and testimony as to her conditions and resulting limitations. Given the claimed errors raised by the Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On October 2, 2023, the ALJ issued her decision. (R. at 47-64.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2022.

---

26, 2020. (R. at 93–117.)

2

(R. at 52.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since March 1, 2020, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease; loose bodies in the right shoulder; obesity; depressive/bipolar disorder; anxiety disorder; and post-traumatic stress disorder (PTSD). (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 54.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could frequently balance; occasionally stoop, kneel, crouch, and climb ramps and stairs; never crawl or climb ladders, ropes, or scaffolds; occasionally push, pull, and reach overhead with the right upper extremity and frequently reach in all other directions with the right upper extremity; and never be exposed to hazards such as unprotected heights, moving mechanical parts and occupational driving. [Plaintiff] can perform simple tasks

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

without a production rate pace, such as assembly line work; can interact occasionally with coworkers and supervisors but should have no interaction with the public; and can adapt to occasional changes.

(R. at 57.)

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (R. at 58.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a packager, warehouse worker or HVAC installer helper. (R. at 62.) Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded at Step 5 that there are jobs that existed in significant numbers in the national economy that Plaintiff can perform such as a price marker, housekeeper or mail clerk. (R. at 63.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 1, 2020. (R. at 64.)

## IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.  ANALYSIS

Plaintiff asserts one statement of error raising two distinct issues. First, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence to the extent it found that Plaintiff was able to reach overhead with the right upper extremity and frequently reach in all other directions with the right upper extremity. Additionally, Plaintiff asserts that the ALJ erred

by interpreting raw medical data. As explained below, the Undersigned disagrees and finds that the ALJ's decision is supported by substantial evidence.

Some context for Plaintiff's arguments is in order. In a prior written decision dated February 26, 2020, ALJ Heidi Southern found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: No more than frequent balancing. No more than occasional stooping, kneeling, crouching, or climbing of ramps and stairs. **No more than occasional pushing, pulling, or reaching in all directions with the right upper extremity**. No crawling. No climbing of ladders, ropes, or scaffolds. No exposure to unprotected heights or moving mechanical parts. The claimant is limited to performing simple, routine, and repetitive tasks, defined as work that can be learned in 30 days or less. The claimant is unable to perform work at a production-rate pace, such as assembly line work, but can perform goal-oriented work, such as office cleaner work. No more than occasional contact with supervisors, co-workers, and the general public. No more than occasional changes in an otherwise routine work setting.

(R. 103) (emphasis added).

In this case, at Plaintiff's most recent hearing, the ALJ initially proposed the following hypothetical to the VE:

> Q … I'd like you to consider a hypothetical individual who could perform a range of light work as that's defined in our regulation in the DOT.
>
> This person could frequently balance, occasionally stoop, kneel, crouch or climb ramps and stairs. Occasionally push, pull and reach overhead with the right upper extremity, frequently reach in other directions with the right upper extremity. Never crawl, never climb ladders, ropes or scaffolds. Cannot be exposed to hazards such as unprotected heights or moving mechanical parts, no occupational driving.
>
> This person can perform simple tasks without a production-rate pace such as an assembly line. They can interact occasionally with coworkers and supervisors, but should have no interaction with the public. And they can adapt to occasional changes. …

(R. at 87-88.)

In response, the VE testified that such an individual could not do any of Plaintiff's past work as it was actually or generally performed but that there was other light unskilled work that an individual of Plaintiff's age, education and past work experience could perform considering the limitations. (R. at 88.) The ALJ then changed the hypothetical so that reaching in all directions with the upper extremity was limited to only occasional. (*Id*.) The VE testified that, in combination with the other restrictions, both light and sedentary work would be precluded under the hypothetical as revised. (R. at 88-89.)

From this exchange, Plaintiff speculates that the ALJ "tweaked" Plaintiff's ability to reach with the upper right extremity to an ability to reach overhead "occasionally," but reach in all other directions "frequently" solely to avoid finding Plaintiff disabled. It is this "tweaking" that Plaintiff alleges is the source of both of the ALJ's errors, including her failure to cite substantial evidence and her interpretation of objective medical data.

By way of further context, the ALJ acknowledged the prior ALJ's physical limitations and the state agency medical consultants' adoption of those findings. Specifically, the ALJ discussed the following:

> The State agency medical consultants also adopted the prior ALJ physical limitations. This is persuasive in part, to the extent, I adopted a very similar range of limitations. However, I made some adjustments based on the current evidence, particularly with respect to reaching and therefore, do not find the State agency findings persuasive to that extent. The State agency findings were somewhat supported by their review of the evidence at the time they were issued, but not entirely consistent with the collateral record, showing, for example fewer issues with the right shoulder. Otherwise, the findings are generally well-supported and consistent with the record.

(R. at 60.) With respect to the matter of the updated record, the ALJ further explained:

> Since the prior ALJ decision, the claimant has sought some treatment for his pain complaints. During a routine health maintenance examination, he reported chronic lumbar pain and right shoulder pain. He noted that he had been off Gabapentin for four months and wanted to re-start this medication. Lumbar spine imaging showed moderate degenerative changes and no acute findings. Right shoulder and right clavicle x-rays confirmed stable loose bodies near the acromioclavicular joints with no acute findings (Exhibit B1F/22, 24, 40-42). The claimant primarily followed with his family healthcare provider for complaints of chronic pain for which he has been prescribed Gabapentin and Mobic (Exhibits B1F/28-29; B8F/26-27, 42, 63). Physical examination findings are generally unremarkable. The claimant has been noted to exhibit variable gait, as at times he is noted to have antalgic gait, and at other times his gait is normal (Exhibits B1F/9, 22; B5F/9; B8F/12, 54, 63). In general, the evidence regarding his physical examinations is mixed, with a preponderance of normal findings, and scattered abnormal findings mixed in, such as tenderness to palpation, stiffness, abnormal gait, and abnormal sensation in the toes (see Exhibits B1F/12, 22; B5F/9; B7F/4, 7; B8F/30, 35, 39, 43, 46, 55-56; B10F/123, 127; B12F/4-5). Normal findings including motor strength, reflexes, that he is awake and alert and that he is in no distress or no acute distress despite his complaints of severe pain. Overall, the limitations adopted by the prior ALJ remain mostly relevant given the lack of new significant physical findings or treatment. However, I found better ability to reach with the right upper extremity considering minimal evidence related to the claimant's right upper extremity during the current period with only evidence of loose bodies and no evidence of degenerative joint disease, arthritis, or tendinopathy.

(R. at 58-59.)

Against this backdrop, Plaintiff contends that the ALJ did not cite substantial evidence for her conclusion that the updated record shows "fewer issues with the right shoulder." Instead, in Plaintiff's view, the ALJ merely interpreted raw medical data in functional terms to reach her conclusion. Plaintiff particularly notes the ALJ's concluding statement above that she "found better ability to reach with the right upper extremity considering minimal evidence related to the claimant's right upper extremity during the current period with only evidence of loose bodies and no evidence of degenerative joint disease, arthritis, or tendinopathy." (ECF No. 8 at 8 citing R. at

8

59.) According to Plaintiff, the ALJ is not qualified to know whether "loose bodies" means his shoulder impairment had improved. Not only that, Plaintiff contends, the ALJ also failed to explain how "loose bodies" in the shoulder caused improvement. (ECF No. 10 at 1.)

      A plain reading of the excerpts above confirms that there is no merit to Plaintiff's position here. Take first his claim that the ALJ did not cite substantial evidence to support her conclusion that the updated record shows "fewer issues with the right shoulder." To the contrary, the ALJ reasonably found that the record evidence did not support the previous ALJ's finding that Plaintiff was limited to no more than occasional reaching in all directions with the right upper extremity. Indeed, in the decision at issue here, the ALJ specifically cited to Plaintiff's medical reports dated May 24, 2021, in concluding that Plaintiff's right shoulder and right clavicle x-rays demonstrated no acute findings, including no evidence of degenerative joint disease, arthritis, or tendinopathy. (R. at 59 citing R. at 436, 437.) Those reports, which post-date the previous ALJ's opinion by more than a year, indicated, with respect to both Plaintiff's right clavicle and right shoulder, the following findings: "… no evidence of fracture or dislocation … no suspicious bone lesions … 2 or 3 small loose bodies near the AC joint … soft tissues are normal." (R. at 436, 437.) From those x-ray findings, the reviewing physician, Dr. Michael Barrows, offered the following impression: "No acute findings. Loose bodies near the AC joint." (*Id*.) These reports constitute substantial evidence for the ALJ's finding that Plaintiff was less limited with respect to his right upper extremity than the previous ALJ had found. In short, Plaintiff's argument, which essentially requires the ALJ to prove a negative, is belied by the ALJ's explicit reasoning.

Further, and notably, for his part Plaintiff does not point to any evidence contradicting the ALJ's interpretation of the cited x-ray reports. Instead, Plaintiff disingenuously asserts that the ALJ interpreted raw medical data in functional terms. This facet of Plaintiff's argument also fails. First, as discussed, the ALJ did not interpret raw medical data but considered the report prepared by Dr. Michael Barrows. As courts within this Circuit have found, "an ALJ's review of a medical provider's summation of medical results does not constitute an ALJ interpreting raw data." *Michelle B. o/b/o Duane B. v. Comm'r of Soc. Sec.,* No. 3:23-CV-361, 2025 WL 395888, at *6 (S.D. Ohio Feb. 5, 2025), *report and recommendation adopted sub nom. Michelle B. on behalf of Duane B. v. Comm'r of Soc. Sec.,* No. 3:23-CV-361, 2025 WL 854720 (S.D. Ohio Mar. 19, 2025) (citing *Michael G. v. Comm'r of Soc. Sec.*, No. 2:21-CV-5467, 2022 WL 11615881, at *8 (S.D. Ohio Oct. 20, 2022) (Jolson, M.J.) (*citing Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726–27 (6th Cir. 2013))). In fact, it is within an ALJ's ability to interpret medical data from an x-ray where the relevant raw data has already been "read and interpreted by a radiologist." *Rudd*, at 726-727. That is the situation here. Plaintiff's half-hearted and largely undeveloped attempt to distinguish *Rudd* is to no avail.

Similarly unavailing is Plaintiff's argument that the ALJ was obligated to further develop the record because Dr. Barrows did not interpret Plaintiff's x-rays in functional terms. Although Plaintiff does not cite to it, this argument appears rooted in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio Mar. 31, 2008). Even that case, however, recognized that a functional capacity opinion from a medical source is not necessary in every case, especially where the medical evidence "shows relatively little physical impairment," and the ALJ can render a

commonsense judgment about functional capacity even without a physician's assessment. *Id*. at 912. As discussed above, Dr. Barrows' interpreted Plaintiff's x-rays from May 2021 as showing no acute findings and the confirming the existence of only two or three "loose bodies." Given this description of relatively little physical impairment, the ALJ could render a commonsense judgment about functional capacity.

In short, substantial evidence supports the ALJ's RFC finding concerning Plaintiff's right upper extremity. Moreover, the ALJ built a logical bridge between the evidence and her reason for limiting Plaintiff to overhead reaching "occasionally" but reaching in all other directions "frequently." Accordingly, the Undersigned finds no error and concludes that remand is not warranted.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 8) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: December 3, 2025**                             *s/ Elizabeth A. Preston Deavers*
                                                      **ELIZABETH A. PRESTON DEAVERS**
                                                      **UNITED STATES MAGISTRATE JUDGE**